**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION**

|  |  |
|---|---|
| In re:<br><br>RICHARD GARREPY AND HEATHER GARREPY<br><br>          Debtors | Chapter 13<br>Case No. 12-44304-MSH |

**MEMORANDUM OF DECISION AND ORDER ON
TRUSTEE'S OBJECTION TO PLAN CONFIRMATION**

Before me is the objection of Denise M. Pappalardo, standing chapter 13 trustee, to confirmation of the chapter 13 plan of the debtors, Richard and Heather Garrepy. The parties have narrowed their dispute to a single question of law: May the debtors deduct payments for a stripped mortgage when calculating projected disposable income under §1325(b)(1)(B) of the Bankruptcy Code? For the reasons that will follow, the answer is no.

The material facts are undisputed. On December 18, 2012, the Garrepys filed their joint voluntary petition for relief under chapter 13 of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*). As of the petition date, the Garrepys owned a home in North Grafton, Massachusetts. According to schedule D of the schedules of assets and liabilities filed by the Garrepys in support of their bankruptcy petition, the property is encumbered by a first mortgage securing debt in the amount of $233,309.00 and a second mortgage securing debt in the amount of $42,147.00. Both mortgages are held by GMAC Mortgage, LLC. According to the Garrepys' schedule A, the value of the property is less than the outstanding balance of the first mortgage.

The Garrepys' schedules I and J (income and expenses) list average current or projected monthly joint income and expenses of $6,342.07 and $6,163.00 respectively, leaving them a net of

1

$179.07 per month in excess income. In their schedule J, the Garrepys did not list any expense related to the second mortgage. In addition to schedules I and J, the Garrepys were required by FED. R. BANKR. P. 1007(b)(6) to file a Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, referred to in shorthand as "Form B22C" or the "chapter 13 means test."[1] Their amended Form B22C indicates that their annualized current monthly income was $107,829.48 ($8,985.79 per month), which is above the applicable median family income for the Commonwealth of Massachusetts. Because their income was above median, the Garrepys were required to complete Part IV of Form B22C, which calculates their allowable deductions from income. In doing so they deducted $147.00 for monthly second mortgage payments to GMAC. According to the Garrepys' Form B22C, after applying their total expense deductions to their current monthly income their monthly disposable income is $95.83.[2]

In their chapter 13 plan the Garrepys propose to pay $180.00 per month to the chapter 13

---

[1] Not to be confused with the chapter 7 means test. *See infra* note 4; *In re Coleman*, 382 B.R. 759, 762-63 (Bankr. W.D. Ark. 2008) (discussing the difference in purpose and application of the chapter 13 means test as compared to the chapter 7 means test).

[2] For purposes of Form B22C, annualized current monthly income is calculated based on a debtor's average monthly income for the six months immediately preceding the filing of the bankruptcy petition. The expenses found in Part IV of Form B22C are determined by reference to § 707(b)(2) of the Bankruptcy Code and are based in large part on Internal Revenue Service local and national standards, with further individualized deductions allowed only for certain types of expenses, such as payments for health insurance or secured claims. As is the case for the Garrepys, this often creates a discrepancy between Form B22C income and expenses on the one hand and schedule I income and schedule J expenses on the other, the latter being based on a debtor's best estimate as of the petition date. For perspectives on this anomaly *see In re Mitchell*, 368 B.R. 845, 849-50 n.2 (Bankr. D. Neb. 2007) ("it is not even like comparing apples and oranges, it is more like oranges and monkeys or something"); *Hamilton v. Lanning* (*In re Lanning*), 545 F.3d 1269, 1275-78 (10th Cir. 2008); *In re Reed*, 454 B.R. 790, 796-800 (Bankr. D. Or. 2011); Theresa J. Pulley Radwan, *Projecting the Impact of Lanning and Ransom: Calculating "Projected Disposable Income" in Chapter 13 Repayment Plans*, 29 EMORY BANKR. DEV. J. 59, 68-70 (2012).

2

trustee for 60 months, for a total payment of $10,800.00. The $10,800.00 will pay administrative expenses, including attorney's fees and the trustee's commission, and a projected 6.78% dividend to general unsecured creditors. The plan further provides that because GMAC's second mortgage is wholly unsecured it will be stripped and GMAC's $42,147.00 claim will be treated as a general unsecured claim.[3]

In her objection to confirmation of the Garrepys' chapter 13 plan, the trustee argues that the plan should not be confirmed because the Garrepys do not dedicate all their projected disposable income to the plan. The trustee relies on the U.S. Supreme Court's rulings in *Hamilton v. Lanning*, 130 S. Ct. 2464 (2010) and *Ransom v. FIA Card Servs.*, 131 S. Ct. 716 (2011), which she argues prohibit the Garrepys from deducting the $147.00 per month second mortgage payment from their income since in fact they will not be making that payment as the second mortgage is stripped and the debt rendered fully unsecured in the plan. The trustee asserts that by disqualifying the $147.00 deduction, the Garrepys' projected monthly disposable income would increase from $95.83 to $242.83, rendering their proposed $180.00 per month plan payment inadequate.

The Garrepys disagree. They maintain that they are entitled to a deduction for the second mortgage payment in their Form B22C according to the plain language of § 707(b)(2)(A)(iii)(I) of the Bankruptcy Code because it is a payment "scheduled as contractually due" to a secured creditor. They cite the decision of the United States Court of Appeals for the First Circuit in *Morse v. Rudler* (*In re Rudler*), 576 F.3d 37 (1st Cir. 2009), where the court allowed a chapter 7 debtor to

---

[3] A chapter 13 debtor is allowed to avoid, or in bankruptcy parlance "strip off," a wholly unsecured, or totally underwater, mortgage and treat the mortgagee's claim as unsecured in his chapter 13 plan pursuant to §§ 506(a) and 1322(b)(2) of the Bankruptcy Code. *Domestic Bank v. Mann* (*In re Mann*), 249 B.R. 831, 840 (B.A.P. 1st Cir. 2000); *see also In re Fortin*, 482 B.R. 35, 39-40 n.5 (Bankr. D. Mass. 2012).

3

deduct mortgage payments under § 707(b)(2)(A)(iii)(I) when calculating disposable income for purposes of means testing,[4] despite the fact that the debtor intended to surrender his home to the bank and would not be making the payments. The Garrepys also rely on *In re Marshall*, 407 B.R. 1 (Bankr. D. Mass. 2009), which extended the reasoning in *Rudler* to chapter 13 on facts similar to those here, allowing chapter 13 co-debtors to deduct payments on a mortgage they intended to strip when determining projected disposable income under § 1325(b)(1)(B). The Garrepys insist that their projected disposable income for purposes of § 1325(b)(1)(B) is $179.07 per month, calculated by subtracting schedule J expenses from schedule I income, and that their plan, which proposes to pay $180.00 per month, is therefore confirmable.

Based on the facts as currently presented, the trustee has the better reasoned argument. Section 1325(b)(1)(B) provides that a chapter 13 plan may be confirmed notwithstanding a trustee's objection if the plan applies all the debtor's projected disposable income to plan payments for the plan commitment period. The phrase "projected disposable income" is not defined in the Bankruptcy Code, but § 1325(b)(2) of the Bankruptcy Code defines "disposable income" to mean current monthly income less certain reasonably necessary expenses. The phrase "current monthly income" in turn is defined in § 101(10A) of the Bankruptcy Code as a debtor's average monthly income for the six months immediately preceding the filing of his bankruptcy petition, which is the formula adopted in Form B22C. To determine what are reasonably necessary expenses deductible from current monthly income in cases involving debtors whose income

---

[4] Chapter 7 debtors are subject to the means test to determine whether a chapter 7 filing should be dismissed as abusive. Under § 707(b)(2) of the Bankruptcy Code, a presumption that a debtor's bankruptcy filing was an abuse of the provisions of chapter 7 arises if the debtor's average monthly income for the six months immediately preceding the bankruptcy filing, less certain allowable monthly expenses, is greater than the amount allowed by statue.

4

exceeds the applicable median, like the Garrepys, § 1325(b)(3) of the Bankruptcy Code requires reference to § 707(b)(2). Section 707(b)(2) of the Bankruptcy Code enumerates those expenses which may be deducted from income in performing the means test. The § 707(b)(2) expenses are included in Part IV of Form B22C as deductions from current monthly income. Among those expenses, § 707(b)(2)(A)(iii)(I) allows above-median debtors to deduct "all amounts scheduled as contractually due to secured creditors."

In *In re Kramer*, 495 B.R. 121 (Bankr. D. Mass. 2013), Chief Judge Frank J. Bailey of this court considered the identical issue in dispute here. Judge Bailey found that, while § 707(b)(2)(A)(iii)(I) allows the monthly payment of a stripped mortgage to be deducted in Part IV of Form B22C, under *Lanning* the monthly payment for a stripped mortgage may not be deducted when calculating projected disposable income for purposes of § 1325(b)(1)(B). *Id.* at 125-26. Put another way, *Lanning* teaches that the term "projected disposable income" in § 1325(b)(1)(B) is not the same as the term "disposable income" in § 1325(b)(2). The word "projected" requires taking into account changes to a debtor's income or expenses that are known or virtually certain to occur, like being able to save $147.00 each month in light of a stripped-off mortgage. *Lanning*, 130 S. Ct. at 2475. I adopt Judge Bailey's reasoning in *Kramer* in its entirety. *Lanning* was a game-changer and cases such as *Marshall*, which predate *Lanning*, no longer provide the support the Garrepys seek.

Subtracting schedule J expenses from schedule I income in order to determine projected disposable income, as the Garrepy's propose, was the common practice prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). But this practice was superseded by BAPCPA's changes to §1325(b). *Lanning*, 130 S. Ct. at 2475; *Reed*,

5

454 B.R. at 797-98. Post-BAPCPA, a court may deviate from the amount reflected in a debtor's Form B22C when calculating projected disposable income only in "unusual cases" where a debtor presents "known or virtually certain information about…future income or expenses." *Lanning*, 130 S. Ct. at 2475. The Garrepys have presented no basis to support a finding that theirs is an unusual case. The mere fact that their schedules I and J differ from Form B22C is insufficient. *See Reed*, 454 B.R. at 797 ("although schedules I and J are evidence of a debtor's income and expenses, differences between the numbers on the Form B22C and those on the Schedules I and J do not by themselves establish a change in income or expenses that is known or virtually certain to occur").

In this case, since the trustee has objected, § 1325(b)(1)(B) requires that the Garrepys' chapter 13 plan may be confirmed only if the Garrepys apply all their projected disposable income to their plan for its 60 month commitment period. The disposable income figure generated by the Garrepys' Form B22C is indeed $95.83 per month. But based on *Lanning* and the reasoning in *Kramer*, the trustee has presented sufficient grounds to support a finding that the $147.00 per month second mortgage payment may not be deducted when calculating *projected* disposable income. Without additional evidence from the Garrepys showing changes to income or expenses that are known or virtually certain to occur, their projected disposable income for purposes of § 1325(b)(1)(B) would increase to $242.83 per month, $62.83 more than the their proposed plan payment.

The Garrepys attempt to raise a fallback argument. They point out that even if they are not allowed a deduction for the second mortgage payment, they could deduct from projected disposable income $234.00 per month in child support payments they receive. This deduction from

6

income, they hypothesize, would more than offset the $147.00 disallowed mortgage payment expense. The trustee points out that since the Garrepys have not actually attempted to amend their Form B22C to deduct from their income the $234.00 in child support they receive, any argument related to such a theoretical deduction is not ripe for consideration.[5] The trustee is correct. The potential that the Garrepys could amend Form B22C to cure their plan's current state of nonconfirmability presents neither an actual cure nor a justiciable issue ripe for determination.

Because the Garrepys have failed to commit all their projected disposable income to their chapter 13 plan, their plan may not be confirmed over the trustee's objection. The chapter 13 trustee's objection is therefore SUSTAINED. The Garrepys shall within 30 days of the date of this memorandum and order and consistent with the rulings herein, file either an amended chapter 13 plan or a motion to adjust projected disposable income based on known or virtually certain information about their future income or expenses.

Dated: November 6, 2013

By the Court,

_____
Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   Robert W. Kovacs, Jr., Esq.
                     Worcester, MA
                     for the debtors, Richard and Heather Garrepy

                     Joanne Psilos, Esq.
                     Worcester, MA
                     for Denise M. Pappalardo, Chapter 13 Trustee

---

[5] The trustee also suggests that were the Garrepys to attempt such an amendment, it would elicit an objection by her to plan confirmation on feasibility and good faith grounds.